ALFRED C. WHITE ET AL., APPELLANTS, v. WILLIAM J. LIPPINCOTT ET AL., APPELLEES.

FILED FEBRUARY 10, 1910.   No. 15,792.

Highways: LOCATION: BONA FIDE PURCHASER. A purchaser of land affected by a highway established pursuant to the terms of a valid agreement executed by all persons pecuniarily interested cannot take advantage of an error in the county clerk's record entry describing the location, where such purchaser, before he bought the land, had knowledge of the actual location of the highway, or of facts from which such knowledge will be imputed.

APPEAL from the district court for Webster county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Bernard McNeny,* for appellants.

*E. U. Overman, contra.*

ROSE, J.

This is a suit for an injunction to prevent William J. Lippincott, a road overseer, from grading a highway on

plaintiff's land. There was a general finding in favor of defendant, and from a dismissal of the suit plaintiff appealed.

Some of the facts alleged in the petition are, in substance, as follows: October 3, 1906, a highway 40 feet wide on a line directly east and west was by the county commissioners duly established across an eighty-acre tract of land described as the north half of the northeast quarter of section 29, township 1, range 10 west, in Webster county, the center of the highway being 151 feet south of the section line on the northern boundary of the tract. When the county commissioners made the order establishing the road, the eighty-acre tract intersected by it was owned by Richard J. Skeen. Relying upon the record showing the center of the highway was 151 feet south of the section line, plaintiff purchased in good faith from Skeen February 7, 1907, all that portion of the northwest quarter of the northeast quarter of section 29 south of such highway. Subsequently defendant entered upon plaintiff's land for the purpose of grading a highway south of the one mentioned, where none had been established. There was a prayer for an injunction to prevent this alleged trespass. The proceedings of the county commissioners are set out in the answer of defendant and show that a petition for the opening of a road across Skeen's eighty-acre tract was filed February 6, 1906. They further show: The section line on the northern boundary was abandoned as a roadway to avoid a creek. A route varying from a direct line east and west was surveyed a short distance south of the section line and a surveyor's plat showing the course was filed with the county clerk. According to the plat the point farthest south was in a .draw or pocket opening toward the north into the channel of the creek. From this point the distance to the section line is marked on the plat as "151 feet." This route was adopted by the county commissioners June 21, 1906, and from an allowance for damages Skeen appealed to the district court. August 25, 1906, Skeen, the petitioners for

the road and the county commissioners entered into an agreement containing, among other things, the following: "The course of said road as the same crosses said eighty-acre tract shall be and hereby is changed from that described in the order of said board of June 21, 1906, as follows: Said road shall be located straight across said eighty-acre tract from west to east at a distance of 151 feet from the north line of said eighty; said distance being the farthest point south marked in the survey of said line of road, as reported in said proceedings. It is to be a forty-foot road; the said distance of 151 feet is the center line thereof. In constructing and opening said road for travel the said Webster county by its proper authorities shall cause a bridge to be built where the said line of road as herein provided for crosses a draw or pocket on said land near the eastern boundary of said tract, in a substantial manner and of sufficient height and width that stock may freely pass in under the same, and so that the said Skeen as owner of the land on both sides of the road may run his fences up to said bridge and thus provide a passage way under the road for stock from one side to the other. * * * Said Skeen shall be paid the sum of $200 heretofore allowed him by said county as damages on account of the location of said road, and the petitioners whose names are signed hereto agree to pay the said Skeen the sum of $100 additional thereto, all of said moneys to be paid before any work is done on said road and within twenty days from the date of this agreement."

An order containing the following provisions was entered on the county records October 3, 1906: "That in the location and opening of said road the course thereof be and it is changed where the same crosses the north half of the northeast quarter of section 29, township 1, range 10, in Webster county, so that the same shall be and is established in a straight line over and across said tract from west to east, the center thereof to be 151 feet distant south from the north line of said tract and the width of

said road to be 40 feet; and that at the point where said
road crosses a draw or pocket near the eastern boundary
of said tract, a bridge be constructed by the county in a
substantial manner, of sufficient height and width that
stock may freely pass under the same; and that the proper
officers be and they are instructed in the recording, plat-
ting and opening of said road to conform to the change
hereby made, the former course proposed and reported
for said road across said tract being annulled and set
aside." In this order, the one on which plaintiff relies,
the description of the route varies from the description
in the agreement on which the order is based. Skeen ac-
cepted the damages fixed by the agreement and dismissed
his appeal from the former action of the county board.
The entry of October 3, 1906, was corrected March 17,
1908, after notice to plaintiff and Skeen, by an order con-
taining the following language: "It is therefore adjudged
by this board that said above and last description is in-
correct and incomplete, untrue and not in conformity to
the facts and that the same was placed in said commis-
sioners' record without the knowledge or consent of the
board of county commissioners, then in session, but was
procured or placed in said record by L. H. Blackledge,
attorney for Richard J. Skeen, without authority of said
board and by mistake or oversight on his part, and that
said record should be so changed as to speak the truth and
conform to the fact, and the same is hereby changed and
annulled in all things wherein it does not entirely conform
to and ratify said original agreement; that said defective
description, to wit, *'in a straight line over and across said
tract from west to east, the center thereof to be 151 feet
distant south from the north line of said tract'*, is hereby
annulled and set aside and the correct description as given
in full in the original agreement, to wit, *'straight across
said eighty-acre tract from west to east at a distance of
151 feet from the north line of said eighty; said distance
being the farthest point south marked in the survey of
said line of road as reported in said proceedings'*, is hereby

adopted and inserted in said commissioners' record instead and in place of the description hereby annulled and set aside." The answer denies that plaintiff was an innocent purchaser. Skeen intervened as plaintiff, and Webster county and a number of petitioners for the road intervened as defendants, but the conclusion reached makes further reference to interveners unnecessary.

Plaintiff insists that the county commissioners had no power to change their order of October 3, 1906, so as to make it effective against him after he made his purchase; that he was an innocent purchaser; and that the decree dismissing his suit is not sustained by the evidence. The case may properly be determined by answering the question: Was plaintiff an innocent purchaser? It seems clear from the proceedings of the county commissioners and the proofs in relation thereto that the parties to the agreement understood the term, "at a distance of 151 feet from the north line of said eighty", was a part of the description of the point farthest south on the route, there being evidence that the actual distance was 200 or 201 feet. Otherwise, the clause, "said distance being the farthest point south marked in the survey of said line of road, as reported in said proceedings", would perform no office whatever in the agreement or record. Before plaintiff purchased the land there was a bridge across the draw or pocket. Three witnesses testified there was a stake at the point farthest south on the survey, and there is proof that this stake was the center of the road agreed upon by all parties to the contract. There is testimony that the stake was at the point farthest south when the bridge was constructed there. There is also testimony tending to show: When the highway was established October 3, 1906, plaintiff was road overseer of the district in which the road in question was located. He was a listener during the proceedings October 3, 1906, when the order upon which he relies to show the location of the highway was made. He had heard about the agreement. When he was road overseer before he made his purchase,

but after the order of October 3, 1906, had been made, he hauled lumber for the bridge and left it at the draw, or point farthest south, as indicated by the survey, a distance of 200 or 201 feet from the north line of the eighty-acre tract. The bridge contractor testified: "I had to make him haul one or two loads to locate the place there." Plaintiff knew the bridge was about 15 rods east of the tract purchased. The moving of the bridge farther north would have defeated two purposes of the agreement. It would have required the building of a bridge and the grading of a road in the channel of the creek, and would have left the draw or pocket without a bridge. Prior to his purchase he examined the record entry of the order before it was corrected. That record imparted notice to him that the road would cross the draw or pocket, because it contained the order "that at the point where said road crosses a draw or pocket near the eastern boundary of said tract, a bridge be constructed." The record also gave him notice that the road ran directly east and west. He knew the location of the bridge, having hauled lumber there when he was road overseer. A little attention to direction in connection with his actual knowledge of physical conditions would have shown where a line running west over the bridge would cross the eighty-acre tract containing the land purchased by him. There is sufficient evidence of his knowledge of the actual location of the road, or of facts from which such knowledge will be imputed, to justify the trial court's finding that he was not an innocent purchaser. This conclusion requires an affirmance of the judgment of the district court.

AFFIRMED.